# **HANG & ASSOCIATES, PLLC**
ATTORNEYS AT LAW
136-18 39th Avenue, Suite 1003
Flushing, New York 11354

April 18, 2019

Lorena P. Duarte, Esq.
Tel : (718) 353-8522
Fax: (718) 353-6288
Email: lduarte@hanglaw.com

**VIA E-Mail:**
Hon. Judge Sarah Netburn
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

        **RE: Case No. 18-cv-1113-SN**
        **Javier Galindo and Pifiano Martinez Galindo v. Govan RD Inc., et al.**

Dear Judge Netburn:

This firm is counsel to the Plaintiffs in the above-referenced action. I respectfully submit this letter motion for approval of the parties' Settlement Agreement and Release revised as per your Order of April 17, 2019, Dkt. No. 32 (the "Settlement Agreement") herein attached as Exhibit A. For the reasons set forth below, the parties represent that the Settlement Agreement be approved pursuant to the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 2015 U.S. App. LEXIS 13815 (2d Cir. Aug. 7, 2015) and be found to be fair and reasonable in accordance with the factors set forth in *Wolinsky v. Scholastic Inc*., 900 F. Supp. 2d 332, 335-336 (S.D.N.Y. 2012).

### I.  Plaintiffs' Allegations and Defendants' Responses

This action was originally brought by Plaintiffs on February 7, 2018 for alleged failure to pay minimum wages, unpaid overtime wages, unpaid "spread of hours" premium, failure to give a wage notice at time of hire, failure to provide paystubs pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. 201 et seq., and the New York Labor Law ("NYLL").

*Plaintiff Javier Galindo:* Plaintiff Javier Galindo ("Plaintiff Galindo") alleged that he was formerly employed as a cook and food preparer for Govan RD Inc. f/k/a Honky Tonk Tavern, a restaurant owned by Defendants and located at 1154 1st Avenue, New York, NY 10065. Defendants hired Plaintiff Galindo from August 2006 to September 17, 2016. Plaintiff Galindo alleges that he worked shifts lasting eleven to twelve hours (11-12), six (6) days per week, for an average of 66 hours per week. Plaintiff Galindo was paid in a combination of check and cash and

did not receive a wage notice at hiring or anytime thereafter.

***Plaintiff Pifanio Martinez Galindo:*** Plaintiff Pifanio Martinez Galindo ("Plaintiff Martinez") alleged that he was formerly employed as a food preparer and cook for Govan RD Inc. f/k/a Honky Tonk Tavern, a restaurant owned by Defendants and located at 1154 1st Avenue, New York, NY 10065. Defendants hired Plaintiff Martinez from December 2004 to September 17, 2016. Plaintiff Martinez alleges that he worked eight to nine (8-9) hours per day, six (6) days a week for a total of approximately 51 hours per week. Plaintiff Martinez was paid in a combination of check and cash and did not receive a wage notice at hiring or anytime thereafter.

Both Plaintiffs allege that because they were the restaurant's sole cooks, Defendants offered to pay them $2-3 above minimum wage and pay them the difference in cash as their set salary. As such, Plaintiffs' checks show an appropriate hourly rate and overtime rate; however, this rate was not the actual rate being paid and therefore, Plaintiffs did not receive the proper overtime wages that corresponded to their actual rate based on their total salary paid. Although Defendants did have a time tracking mechanism, any overtime paid was based on the erroneous rate, thus continuously shorting the Plaintiffs on their wages. Plaintiffs allege this was a practice done regularly by Defendants to avoid paying higher overtime rates and to avoid tax liability for the higher wages paid to their employees. Plaintiffs were able to name several other employees that experienced the same deceptive pay practice.

The Plaintiffs conceded that the paystubs provided to their attorneys accurately reflected the hours worked but argued the hourly rate listed was not their actual pay rate. The Defendant's contention is that the Plaintiffs both willingly and with full knowledge and understanding executed both Wage Notices and an Arbitration Agreement and were paid in full during their tenure working for the Defendant from 2006 to 2016 as reflected in their paystubs. The Plaintiffs were paid through a payroll service hired by the Defendant and were fully compensated for both their regular 40-hour work week plus any alleged overtime.

In sum, there is a bona fide dispute between the Parties regarding the merits of Plaintiffs' wage and hour claims. The instant settlement constitutes the Parties' effort to resolve same in an amicable fashion through arm's length bargaining.

## II.   Settlement Amount

At the inception of the litigation, Plaintiffs submitted a settlement demand in the amount of approximately $320,000.00 of attorney's fees. The demand was wholly based on Plaintiffs' maximum possible recovery if they were able to establish each and every claim. After much negotiating the Plaintiffs then lowered their demand to $65,000.00 for both Plaintiffs. The Defendant counteroffered at $15,000.00.

The Parties engaged in good faith settlement discussions and engaged in informal discovery throughout a period of several months and the Parties agreed on the settlement amount of $24,000.00 in order to avoid potentially significant and unanticipated burdens and expenses in establishing their respective positions.

The gross settlement amount is $24,000.00, inclusive of Plaintiffs' counsel's attorneys' fees and costs of $8,331.00 with settlement payments to Plaintiff Galindo of $9,713 and to Plaintiff Martinez of $5,956.00. The attorney's fees and costs are allocated as follows: $7,780.00 for fees, and $551.00 for costs. The retainer agreement, attorney bill and invoices are herein attached as Exhibit B. This reflects a reasonable compromise between the parties' dispute over Defendants' alleged failure to pay minimum wages, unpaid overtime wages, failure to give a wage notice at time of hire, and failure to provide paystubs.

### III. The Settlement Agreement is Fair and Reasonable

The Plaintiffs seek final approval of the Settlement Agreement reached in this case, pursuant to the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc*., 2015 U.S. App. LEXIS 13815 (2d Cir. Aug. 7, 2015) (holding that, "the FLSA falls within the 'applicable federal statute' exception under Rule 41" and therefore, "Rule 41(a)(1)(A)(ii) stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the DOL to take effect."). As set forth in further detail below, and in accordance with *Wolinksy v. Scholastic Inc.*, 900 F. Supp. 2d 332 (S.D.N.Y. 2012), the parties are in agreement that this settlement is fair, reasonable, consistent with the underlying purposes of the FLSA, and is the product of equal bargaining.

As articulated in *Wolinksy*, when assessing the fairness of a settlement, a court should consider the totality of circumstances including but not limited to several factors such as: (1) the range of possible recovery; (2) the extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses"; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement "is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion. *Wolinksy*, 900 F. Supp. 2d at 335 (quoting *Medley v. Am. Cancer Soc.*, No. 10 Civ. 3214, 2010 U.S. Dist. LEXIS 75098 (S.D.N.Y. July 23, 2010)). Based on an analysis of these factors, the parties are confident that the negotiation process was conducted at arm's length and should pass this Court's scrutiny.

#### A. The Range of Possible Recovery

Based on damage calculations prepared by Plaintiffs' counsel relying on Plaintiffs allegations, Plaintiff Galindo is owed $202,550.31 in back wages and Plaintiff Martinez is owed $121,929.26 in back wages, exclusive of statutory penalties, liquidated damages and attorney's fees. However, Defendants produced significant evidence to rebut Plaintiffs' allegations, and Plaintiffs were unable to provide any evidence to rebut such. Notwithstanding, after informal discovery production and extensive settlement discussions, the parties were able to negotiate a Settlement Agreement for $24,000.00, inclusive of attorneys' fees and costs.

#### B. The Seriousness of the Litigation Risks Faced by the Parties

Considering the risks and the uncertainty of trial coupled with the fact that Defendants met their burden of proof and Plaintiffs could not rebut such evidence, Plaintiffs' counsel believes that this settlement is a fair result and should thus be approved. See e.g. *Meigel v. Flowers of the*

*World, NYC, Inc.,* 2012 U.S. Dist. LEXIS 2359, at *2-3, 11 Civ. 465 (KBF) (S.D.N.Y. Jan. 9, 2012) ("Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement.") (internal citations omitted). In addition, the cost of the Settlement Amount is less than the cost trial. By settling now rather than litigating further, Plaintiffs avoid the risk of losing at trial or, even if prevailing at trial, avoid the inability to collect due to the financial hardship faced by Defendants. Continued litigation therefore will negatively impact the Plaintiffs' chances at any recovery. Most importantly, Plaintiffs understand the situation, are satisfied with the settlement amount, and voluntarily and willingly entered into the settlement agreement.

### C. The Settlement Negotiations Occurred at Arm's Length

From the onset of this case the parties engaged in communications and discussions in an effort to settle this matter. Defendants represented that they maintained and would produce all relevant payroll and time keeping records, as well as wage notices and arbitration agreements signed by Plaintiffs. In light of these records, Plaintiffs' counsel analyzed Defendants' payroll records along with Plaintiffs' allegations and prepared a revised calculation for purposes of arriving at a more accurate calculation (the "Damages Calculations"). Plaintiffs produced said Damage Calculations and proceeded to engage in discovery that included producing evidence, such as witness testimony, to rebut Defendants records. After a several months of negotiations based on the evidence produced, the parties were able to resolve the dispute thereby avoiding continued costly litigation. Plaintiffs' counsel advised the Court, via ECF letter dated March 6, 2019 of the settlement reached in principle with Defendants.

### D. Plaintiff's Counsel Is Entitled to Reasonable Attorneys' Fees and Costs

The settlement agreement also provides for reasonable attorneys' fees. Pursuant to our firm's agreement with the Plaintiffs the firm will be reimbursed $551.00 in filing fees, costs, and retain 1/3 of the remaining settlement amount of $7,780, which comes to a total of $8,331.00. Plaintiff Galindo will receive $9,713 and Plaintiff Martinez will receive $5,956 as set forth in Paragraph 2 of the Settlement Agreement. Based on my experience in handling FLSA and NYLL matters, this is a standard and acceptable arrangement for attorneys' fees.

Hang & Associates, PLLC ("Hang & Associates") represents both plaintiffs and defendants in litigating claims arising out of the employment relationship, including claims for employment discrimination, wage and hour issues, and contact disputes. Mr. Jian Hang, Esq., principal attorney of Hang & Associates, has over ten years of experience in the field of employment law. His office currently represents plaintiffs with wage & hour claims in more than 100 lawsuits in federal and state courts and is well respected in the Flushing community. Prior to forming Hang & Associates Mr. Hang practiced labor law at Epstein, Becker & Green, P.C. Hang & Associates focuses exclusively on employment law. Given his years of experience, and the practice's specialized focus on employment law, Jian Hang typically charges an hourly rate of $400. I, Lorena P. Duarte, Esq., lead attorney on this case, have experience in employment, family, real estate, and mass tort litigation. Being fluent in Spanish and French, I specialize in representing the Spanish speaking

community in these cases both on plaintiff and defendant side. Currently, I independently handle a case load of 45+ cases which includes client intake, discovery, depositions, motion practice, settlement and possible trial and bill an hourly rate of $300. Hang & Associates spent a considerable amount of time on this matter, and had it been billing hourly, it would have incurred fees and costs of $9,491.00.

## V.     Conclusion

For the foregoing reasons, Counsel for all parties respectfully submit that the Settlement Agreement is fair and reasonable, and therefore jointly request that the Court approve or so order the Settlement Agreement.

                                                        Respectfully submitted,

                                                        */s/ Lorena P. Duarte*
                                                       Lorena P. Duarte, Esq.